JOHN A. SHOPE (admitted pro hac vice)
KEVIN J. CONROY (admitted pro hac vice)
**FOLEY HOAG LLP**
155 Seaport Boulevard
Boston, MA 02210
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
jshope@foleyhoag.com
kjconroy@foleyhoag.com

DAVID M. GOLDSTEIN (State Bar No. 142334)
DAVID C. BROWNSTEIN (State Bar No. 141929)
**FARMER BROWNSTEIN JAEGER & GOLDSTEIN LLP**
235 Montgomery Street, Suite 835
San Francisco, CA 94104
Telephone: (415) 795-2050
Facsimile: (415) 520-5678
dgoldstein@fbj-law.com
dbrownstein@fbj-law.com

Attorneys for Defendant
ZUMPER, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ERNEST MELO, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ZUMPER, INC. & TRADE HOUSE DATA, <br><br> Defendants. | **Case No. 4:20-cv-00714-PJH** <br><br> <u>PROPOSED CLASS ACTION</u> <br><br> [Assigned to the Hon. Phyllis J. Hamilton] <br><br> **DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41 VOLUNTARY DISMISSAL** |

## **TABLE OF CONTENTS**

Introduction ........................................................................................................... 1

Facts and Procedural Background ......................................................................... 2

   Melo's Order of a Background and Credit Check from Zumper ...................... 2

   The First Lawsuit Against Zumper and the First Voluntary Dismissal ............. 5

   The Second (Present) Lawsuit Against Zumper .............................................. 6

   Melo Continues to Resist Arbitration ............................................................. 7

   The Second Voluntary Dismissal ................................................................... 9

Argument ............................................................................................................ 11

I.     MELO'S VOLUNTARY DISMISSAL WAS NOT REQUIRED BY ANY ULTIMATE AGREEMENT TO ARBITRATE ............................................. 11

II.   ZUMPER IS NOT "GOING BACK ON ITS AGREEMENT TO ARBITRATE" OR "PLAYING PROCEDURAL GAMES." ................................. 13

III.  THERE IS NO BASIS TO VACATE THE DISMISSAL UNDER FED. R. CIV. P. 60(B)(1). ............................................................................ 15

   A.    Melo Has Not Provided Admissible Evidence and Therefore Has Not Carried His Burden to Prove "Mistake" or "Excusable Neglect." .............. 15

   B.    There Was No "Mistake" under Rule 60(b)(1) as a Matter of Law ....... 16

   C.    There Was No "Excusable Neglect" under Rule 60(b)(1). ................... 19

      1.   Melo provides no evidence of any purported excusable neglect. ............ 19

      2.   There was no "excusable neglect" as a matter of law ............................ 21

      3.   Whether the failings of Melo's counsel were "excusable" is irrelevant. ....................................................................................... 21

      4.   Melo has not proven good faith. ......................................................... 22

IV.  MELO HAS NOT ESTABLISHED THE EXTRAORDINARY CIRCUMSTANCES REQUIRED FOR RULE 60(B)(6) RELIEF. ................... 22

Conclusion .......................................................................................................... 25

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41 VOLUNTARY DISMISSAL

# TABLE OF AUTHORITIES

## Cases

*Albert v. Ameris Bank*,
  517 Fed. App'x 900 (11th Cir. 2013) ................................................................. 18

*Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*,
  139 F.3d 664 (9th Cir. 1997) ............................................................................... 19

*Am. Lifeguard Ass'n v. Am. Red Cross*,
  1994 U.S. App. LEXIS 8430 (4th Cir. Apr. 22, 1994) ........................................ 17

*Atchison, T. & S. F. R. Co. v. Barrett*,
  246 F.2d 846 (9th Cir. 1957) ............................................................................... 15

*Beverly v. Network Sols., Inc.*,
  1998 U.S. Dist. LEXIS 20453 (N.D. Cal. Dec. 30, 1998) ................................... 16

*Braswell v. Invacare Corp.*,
  760 F. Supp. 2d 679 (S.D. Miss. 2010) ............................................................... 17

*Briones v. Riviera Hotel & Casino*,
  116 F.3d 379 (9th Cir. 1996) ............................................................................... 21

*Cabot Golf Cl-Pp 1, LLC v. Cabot Golf Cl Pp Acquisition, LLC*,
  2013 U.S. Dist. LEXIS 203106 (C.D. Cal. Dec. 17, 2013) ................................. 17

*Catbridge Mach., LLC v. Cytec Engineered Materials*,
  2012 U.S. Dist. LEXIS 100271 (D.N.J. July 18, 2012) ....................................... 25

*Commercial Space Mgmt. Co. v. Boeing Co.*,
  193 F.3d 1074 (9th Cir. 1999) ............................................................................. 10

*Cmty. Dental Servs. v. Tani*,
  282 F.3d 1164 (9th Cir. 2002) ............................................................................. 23

*Cotti v. City of San Jose*,
  2019 U.S. Dist. LEXIS 150803 (N.D. Cal. Sep. 4, 2019) ................................... 21

*Edwards-Brown v. Crete-Monee 201-U Sch. Dist.*,
  491 Fed. App'x 744 (7th Cir. 2012) .................................................................... 17

*Ferretti v. Beach Club Maui, Inc.*,
  2018 U.S. Dist. LEXIS 129849 (D. Haw. Aug. 2, 2018) .................................... 17

*Fowler v.Wells Fargo Bank, N.A.*,
  2019 U.S. Dist. LEXIS 50839 (N.D. Cal. Mar. 26, 2019) ............................. 18, 21

*Gonzalez-Torres v. Zumper, Inc.*,
  2019 U.S. Dist. LEXIS 207390 (N.D. Cal. Dec. 2, 2019) ................................... 12

*Gonzalez v. Crosby,*
    545 U.S. 524 (2005) ........................................................................... 22

*Graham Kandiah, LLC v. JPMorgan Chase Bank, N.A.,*
    2009 U.S. Dist. LEXIS 51499 (S.D.N.Y. June 18, 2009) ................... 17

*Latshaw v. Trainer Wortham & Co.,*
    452 F.3d 1097 (9th Cir. 2006) ..................................................... 19, 21

*Lemoge v. United States,*
    587 F.3d 1188 (2009) ......................................................................... 18

*MediVas, Ltd. Liab. Co. v. Marubeni Corp.,*
    741 F.3d 4 (9th Cir. 2014) ........................................................... 12, 20

*McCarthy v. Consulate Health Care,*
    2016 U.S. Dist. LEXIS 57502 (N.D. Fla. Mar. 29, 2016) ................... 17

*Nelson v. Napolitano,*
    657 F.3d 586 (7th Cir. 2011) ....................................................... 17, 18

*Nelson v. Chertoff,*
    2010 U.S. Dist. LEXIS 45368 (N.D. Ill. May 10, 2010) ..................... 17

*Noland v. Flohr Metal Fabricators, Inc.,*
    104 F.R.D. 83 (D. Alaska 1984) ....................................................... 18

*Perrine v. United States,*
    2016 U.S. Dist. LEXIS 194988 (S.D. Cal. Mar. 14, 2016) ....... 13, 16, 23

*United States v. Alpine Land & Reservoir Co.,*
    984 F.2d 1047 (9th Cir. 1993) ......................................................... 22

*Yesh Music v. Lakewood Church,*
    *See* 727 F.3d 356 (5th Cir. 2013) ......................................... 18, 24, 25

**Statutory Authorities**

9 U.S.C. § 3 ....................................................................................... 11

9 U.S.C. § 9 ....................................................................................... 12

9 U.S.C. § 10 ..................................................................................... 12

15 U.S.C. § 1681p ................................................................................. 6

**Rules**

Fed. R. Civ. P. 41(a)(1)(B) ........................................................... *passim*

Fed. R. Civ. P. 60(b)(1) ................................................................. *passim*

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41 VOLUNTARY DISMISSAL

Fed. R. Civ. P. 60(b)(6).................................................................................... *passim*

Local Rule 7-3(b) ............................................................................................ 15

Local Rule 7-5(a) ............................................................................................ 16

**Miscellaneous**

9 C. Wright & A. Miller § 2368....................................................................... 13

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41
VOLUNTARY DISMISSAL

1

## INTRODUCTION

On March 11, 2020, plaintiff Ernest Melo voluntarily dismissed his claims against defendant Zumper, Inc. in this action, thus preventing the granting of Zumper's pending motion to compel arbitration and concomitant stay of his claims in this Court (Dkt. No. 52). His attorneys admit that they did so intentionally, likely for perceived tactical advantage, but unequivocally not as a result of any request by Zumper, any procedural requirement, or any order of the Court. They accomplished this by a notice of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A).

That dismissal was Melo's second voluntary dismissal pursuant to Rule 41(a)(1). Fourteen months earlier, Melo had voluntarily dismissed a nearly identical action against Zumper in the Eastern District of Virginia, again in the face of a then-pending motion by Zumper to stay his claims due to his having agreed to arbitrate any claims when he created a Zumper account. Therefore, pursuant to Rule 41(a)(1)(B), the March 2020 notice of dismissal "operate[d] as an adjudication on the merits" of Melo's claims against Zumper, a defense that Zumper has advised Melo it will assert in his now-pending arbitration claim against Zumper before the American Arbitration Association. Contrary to Melo's assertions--for which, in defiance of this Court's local rules, he offers no affidavit or other evidentiary support--Zumper does not and has never contended that it should not arbitrate any claims, including its defenses thereto. Rather, it has merely noted that it will seek dismissal of the claims by the arbitrator based on that defense.

Now, realizing that his tactical games could redound to his disadvantage for that reason, , Melo asks the Court to undo his own, deliberate voluntary dismissal. The Court should deny Melo's motion because he has not shown that he meets the standards for such relief set forth in Federal Rule of 60(b). Indeed, one of the purposes of Rule 41 is to prevent precisely the sort of procedural gamesmanship at issue here, which in this case and others has imposed inordinate litigation expense on the defendant. Intentional dismissals, even if later viewed as foolish or unwise, do not justify the extraordinary relief of setting aside a judgment. Deliberate actions are not a "mistake" and negligent failure to consider legal rules is not "excusable neglect" under binding authority interpreting Rule 60(1); nor are they "extraordinary circumstances" beyond the

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41
VOLUNTARY DISMISSAL

plaintiff's control, as Melo admits is required for relief under Rule 60(b)(6)

Melo's motion is also notable in that, while nominally asserting a mistake on the part of his attorneys, it goes to great lengths to blame *Zumper* for the alleged mistake.  In this regard the motion is in fact replete with misrepresentations, omissions, and outright lies that are emblematic of Melo's litigation strategy throughout the life of this action and his prior action against Zumper.  In essence, because Melo's underlying and largely manufactured claim is weak, Melo's very experienced class action counsel has attempted to leverage the expense of defending duplicative proposed class action litigation proceedings in what is now his third lawsuit over the events in question to extort a payment utterly disproportionate to his asserted injuries (now pegged at $1,751,000 in his now concurrently pending arbitration claim).  The law governing voluntary dismissals neither requires nor permits the Court to lend its aid to that effort as now requested.

## FACTS AND PROCEDURAL BACKGROUND

### *Melo's Order of a Background and Credit Check from Zumper*

The underlying facts of this case date back to August 2017, when plaintiff Ernest Melo created an account with Zumper in connection with his efforts to rent an apartment in Virginia, where he allegedly still resides.  Cmplt. ¶¶ 6, 13-14; Dkt. No. 23-1, ¶ 1.  Zumper, which is based in San Francisco, operates a website on which prospective tenants may search and apply for available rentals.  Dkt. No. 12-1, ¶ 2.  As part of the rental process, Melo's realtor asked him to request a credit and background check, which he did.  Cmplt. ¶¶ 13-14.  In connection with that order, Melo created an online account with Zumper and, as held in prior proceedings in the Eastern District of Virginia, agreed to Zumper's terms and conditions.  Dkt. No. 37.

Materially for present purposes, the terms required that Melo assert any claims (other than specified intellectual property claims) in either small claims court wherever Zumper was subject to personal jurisdiction, or by binding individual arbitration in San Francisco administered by the American Arbitration Association.  Dkt. No. 12-5, § 14.  Because the terms and conditions apply to users of many different kinds, including landlords and brokers, they specified use of the Commercial Rules of the AAA, *id.*, but the AAA has an overriding rule that,

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41
VOLUNTARY DISMISSAL

in cases involving a consumer relationship, the AAA may apply its Consumer Rules.  Dkt. No. 12-6 at Rule R-1*.  The Zumper terms also provided that, without derogation of the obligation to arbitrate, any court proceedings other than small claims would also be in San Francisco.  Dkt. No. 12-5, § 14.

Due to Melo's request, Zumper issued a credit, criminal, and eviction report.  The report was based on information supplied to Zumper by two third-party vendors, Experian (for credit history) and Trade House Data (for criminal and eviction history).  Dkt. No. 12-1, ¶ 32; Dkt. No. 12-8, ¶¶ 3-5.  The report listed unfavorable information about Melo.  While Melo has made little effort to specify the facts of his complaint, his focus is that, although listed with caveats that the match was "potential," that actual identities were not guaranteed, and that court records might need to be reviewed, Zumper's report listed an eviction that related to his father, Ernesto Melo, then of Alexandria, Virginia, rather than himself, Ernest Melo, also of Alexandria, Virginia.  Cmplt. ¶ 17; Declaration of John Shope ("Shope Decl.") Ex. G, ¶ 13; Dkt. No. 12-1, ¶ 42.  Zumper had obtained the eviction information from Trade House Data.  Dkt. No. 12-1, ¶ 33; Dkt. No. 12-8, ¶ 5.

The Fair Credit Reporting Act does not impose strict liability for any and all inaccuracies in a consumer credit or background report.  Rather, it requires that credit reporting agencies use "reasonable procedures to assure maximum possible accuracy," 15 U.S.C § 1681e(b), and respond within certain time frames and otherwise respond appropriately to consumer requests for copies of their consumer files and/or correction of errors, 15 U.S.C. §§ 1681g, 1681i.  In both of his now-dismissed court complaints and in his pending arbitration claim, Melo has alleged that confusion of his father and himself noted above resulted from unspecified "unreasonable procedures" and that the error caused unspecified injury to him.  Cmplt. ¶¶ 18-19; Complaint, *Melo v. Zumper, Inc.*, No. 3:18-cv-756-REP (E.D. Va. Nov. 1, 2018); Shope Decl. Ex. G.  Melo has also alleged that he later requested a copy of his consumer file from Zumper, but Zumper did not respond as required by the FCRA.  Cmplt. ¶¶ 20-21.  As noted, in his present arbitration claim, Melo purports to seek damages of $1,751,000.  Shope Decl. Ex. G.

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41
VOLUNTARY DISMISSAL

1   Documents show that Melo's key allegations are simply false or at best misleading.

2   Melo did not use the process explicitly provided on Zumper's website for resolving issues with

3   the accuracy of credit, criminal or eviction reports, which, as noted, Zumper had obtained from

4   third parties.  Dkt. No.  12-1 ¶ 40.  Melo, in fact, has **never** requested that Zumper correct any

5   errors.  Nor did he ever request a copy of any credit or background files that Zumper had

6   regarding him as a prelude to such a request.

7   Instead, Melo embarked on what would become a protracted litigation campaign in the

8   hope of extracting large sums and attorneys' fees.  Represented by his present counsel, in

9   September 2017 Melo first filed a lawsuit in the Eastern District of Virginia against Experian

10  over the credit report that he had ordered through Zumper.com.  *See* Complaint, *Melo v.*

11  *Experian Information Solutions, Inc.*, No. 3:17-cv-642-REP (E.D. Va. Sep. 20, 2017).  In

12  defense of that case, Experian provided an affidavit from Zumper's Chief Operating Officer,

13  Taylor Glass-Moore, testifying that the source of information at issue was not Experian, but

14  rather, as noted, Trade House Data.  Declaration of Taylor Glass-Moore, Dkt. No. 35-10 (June 6,

15  2018).[1]  To excuse his multiple suits, Melo falsely states in his present motion (p. 4) that he was

16  not aware of the role of Trade House Data when he filed his first lawsuit against Zumper on

17  November 1, 2018, but that was five months after his counsel received the affidavit of Zumper's

18  Taylor Glass-Moore disclosing precisely that role.

19  Melo and Experian settled in July 2018; Experian agreed temporarily to suspend its

20  practice of requiring inquiring consumers to list an address for themselves that Experian already

21  had in its records.  Consent Injunctive Relieve and Dismissal Order, Dkt. No. 40 (July 10, 2018).

22  While Melo's case against Experian was still pending, however, Melo, but not his present

23  counsel, who were also representing him at that time with respect to these events, sent a letter to

24  Zumper dated May 22, 2018.  The letter was addressed "To Whom It May Concern" at Zumper

25  and requested "a copy of all information you have in your file about me."  *See* Dkt. No. 12-1,

26
27  _____

[1] Citations to docket numbers in this paragraph refer to filings in the *Melo v. Experian Information Solutions, Inc.* matter, case number 3:17-cv-642-REP in the Eastern District of Virginia.

28

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41
VOLUNTARY DISMISSAL

¶ 40; Dkt. No. 12-9.  Because Melo did not use the website's explicit process for correction of credit report inaccuracies, did not (contrary to paragraph 20 of the now-dismissed complaint) mention a "consumer" or credit file, and did not provide any indication that his request related to a consumer or credit file, Zumper believed that he was requesting a copy of an employment file. *See* Dkt. No. 12-1, ¶¶ 40-41; Dkt. No. 12-10.  Zumper responded by letter dated May 29, 2018 that it had "received a request from you asking for a copy of your employee file" but did "not have any record of you being a current or former employee of Zumper."  Dkt. No. 12-1, ¶ 41; Dkt. No. 12-11.  Zumper postulated that "we may have received this request by mistake."  Dkt. No. 12-11.  Melo never responded.  Dkt. No. 12-1 ¶ 41.  Instead, the next communication from Melo to Zumper came in the form of a new lawsuit, this time against Zumper itself.

### The First Lawsuit Against Zumper and the First Voluntary Dismissal

Thus, four months after settling his case against Experian, Melo sued Zumper in the Eastern District of Virginia, initiating the second phase of his litigation campaign.  *See* Complaint, *Melo v. Zumper, Inc.*, No. 3:18-cv-756-REP (E.D. Va. Nov. 1, 2018).  Although, as noted, Melo had been advised that Trade House Data was the source of the assertedly erroneous information in the course of the earlier Experian suit, his November 2018 complaint named only Zumper.  *Id.*  Like the case against Experian, the suit against Zumper was proposed as a class action.  *Id*.

Zumper moved to stay pending arbitration.  *See* Motion to Stay Proceedings Pending Arbitration, Dkt. No. 9 (Dec. 10, 2018).[2]  Melo requested and received an extension of time to respond to Zumper's motion.  *See* Order Granting Plaintiff's Motion for and Enlargement of Time, Dkt. No. 17 (Dec. 26, 2018).  On the day that his opposition was due, and without any reference to Trade House Data, he requested a second extension, which Zumper did not oppose. *See* Second Motion for Extension of Time, Dkt. No. 18 (Jan. 14, 2019).  On January 22, 2019, the day Melo's opposition would have been due if the second request for an extension had been

---

[2] Citations to docket numbers in this paragraph refer to filings in the *Melo v. Zumper, Inc.* matter, case number 3:18-cv-756-REP in the Eastern District of Virginia.

granted, Melo unilaterally and voluntarily dismissed his suit without prejudice, citing Rule 41(a)(1)(A)(i).  Notice of Voluntary Dismissal, Dkt. No. 20 (Jan. 22, 2019).

***The Second (Present) Lawsuit Against Zumper***

Seven months later, with the two-year anniversary of Melo's having requested his credit and background report from Zumper, and therefore the statute of limitations, then looming, 15 U.S.C. § 1681p, Melo revived his litigation campaign by filing a new complaint in the Eastern District of Virginia.  This new lawsuit again proposed a class action against Zumper based on the very same claims in the prior suit, but added an individual claim against Trade House Data as well.  *See* Cmplt.  Zumper again moved to stay the case pending arbitration, but also moved to transfer the case to this Court where a similar proposed class action against Zumper was by then pending.  *See* Dkt. No. 11.[3]  On the day that Melo's opposition to that motion was due (following an extension to which Zumper consented), Melo's counsel filed an opposition, Dkt. No. 17, then attempted to "withdraw" the opposition, claiming that it had been filed by mistake, Dkt. No. 18, then requested a further extension of time to respond to the motion, stating that he lacked time to file a timely response even though he had already filed one, Dkt. Nos. 19, 20.  After Melo filed a new opposition, Zumper replied in support of its motion on November 4, 2019.  Dkt. No. 24.

At that point, more than two months after filing the new complaint naming Trade House as a defendant and with Zumper's motion fully briefed, Melo had not yet served Trade House.  *See* Dkt. Nos. 25, 26.  After being served, Trade House moved to join in Zumper's pending motion to stay.  *See* Dkt. No. 34.  Melo did not oppose that motion.

On January 28, 2020, Judge Novak granted Zumper's motion to transfer venue and transferred the case to this Court.  Dkt. No. 37.  Rejecting Melo's argument that he had never agreed to Zumper's terms, Judge Novak held that Melo had in fact done so, relying in part on this Court's opinion in *Gonzalez-Torres v. Zumper*, Case No. 4:19-cv-02183-PJH, which Judge Novak deemed "an almost identical case."  Dkt. No. 37 at 25.  Judge Novak explicitly declined

---

[3] As explained previously, Zumper was unable to move to *compel* arbitration (as opposed to moving for a stay pending arbitration) because of the Eastern District of Virginia's interpretation of its lack of authority to compel arbitration outside of that district.  *See* Dkt. No. 52 at 6 n.2.

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41 VOLUNTARY DISMISSAL

1  to decide whether to stay the case pending arbitration and, although it had not been opposed,

2  denied Trade House's joinder motion without prejudice.  *Id.* at 29.

3  ***Melo Continues to Resist Arbitration***

4         After the case was transferred, Zumper filed an administrative motion to request that the

5  case be deemed related to the *Gonzalez-Torres* case just noted.  Defendant Zumper, Inc.'s

6  Administrative Motion to Consider Whether Cases Should Be Related, Dkt. No. 41, *Gonzalez-*

7  *Torres v. Zumper, Inc.*, No. 3:19-cv-2183-PJH (N.D. Cal. Feb. 4, 2020).  Before filing, Zumper's

8  counsel inquired whether Melo would assent to the administrative motion.  Shope Decl. ¶ 2,

9  Ex. A.  Melo's counsel responded claiming that the administrative motion was "unnecessary"

10 and that Melo "would arbitrate in California."  *Id.*  Melo's counsel did not respond after

11 Zumper's counsel pointed out that Melo had not stipulated to arbitration on the record.  *Id.*

12 Because Melo's claims against Zumper remained active in this Court with no stay in place,

13 Zumper moved on February 6, 2020 to compel arbitration and to stay the proceedings.  Dkt. No.

14 52.  Trade House again joined in that motion.  Dkt. No. 53.

15        On February 20, 2020, the day his response was due, and despite his purported

16 willingness to arbitrate, Melo requested, without giving any reason, Zumper's assent to an

17 extension of time to respond to the pending motion to compel arbitration; both Zumper and

18 Trade House assented.  Dkt. No. 60.  In an affidavit to support the motion, Melo's counsel cited

19 the complexity of the AAA Commercial Rules specified by Zumper's terms.  Dkt. No. 59-1, ¶ 3.

20 The Court granted Melo's request, extending the deadline to March 5, 2020. Dkt. No. 61.

21        During the requested extension, Melo's counsel stated to Zumper that he would oppose

22 the motion to compel arbitration on the grounds that the AAA Commercial Rules were

23 unconscionable due to expense.  Shope Decl. ¶ 5.  Zumper's counsel responded that the AAA,

24 under its overriding rules, could apply the cheaper Consumer Rules despite the agreement's

25 selection of the Commercial Rules, and that Zumper agreed to the use of the Consumer Rules,

26 under which Mr. Gonzalez-Torres was proceeding.  *Id.*  Melo's counsel proposed that the parties

27 agree to the more expensive arbitration offered by JAMS, but with the expense borne entirely by

28

Zumper.  *Id.*  Zumper consistently rejected these proposals, stating agreement to proceed under either the AAA Commercial Rules or its Consumer Rules.  *See* Shope Decl. ¶ 6, Ex. D.  Melo's counsel rejected that suggestion, asserting that the Commercial Rules were too expensive for his client, and that the Consumer Rules would not permit appointment of a competent arbitrator.  *Id.* He instead proposed picking and choosing certain aspects of the Consumer Rules and certain aspects of the Commercial Rules (specifically concerning the initial allocation of costs and fees). *Id.*  Zumper's counsel rejected that suggestion and reiterated that it was willing to agree to either the Consumer Rules or the Commercial Rules, but not Melo's suggested amalgam.  *Id.*  Melo's counsel did not respond.  *Id.*

At that point, as best Zumper's counsel could discern, Melo remained opposed to arbitration as required by the parties' agreement and the AAA rules and would be submitting an opposition.  However, on March 5, without consulting Zumper, Melo requested an additional five-day extension to respond to the motion.  Dkt. No. 63.[4]  In the declaration filed in support of that motion, Melo's counsel reported that, based on Zumper's willingness to arbitrate pursuant to the AAA Consumer Rules, Melo would no longer oppose the motion as to his obligation to arbitrate his claims against Zumper.  Dkt. No. 63-1.  Melo's counsel represented that the opposition brief would "formally stipulate to the original Motion made by Zumper."  *Id.*  The proposed order that Melo filed with his request included language stating "Plaintiff has also represented that he consents to the Motion to Compel Arbitration as to Defendant Zumper, Inc., with the parties agreeing to arbitrate pursuant to the AAA Consumer Rules rather than the Commercial Rules.  Plaintiff shall file a stipulation to that effect on or before March 10, 2020." Dkt. No. 63-3.  Melo made these representations without advising Zumper of his agreement to the motion to compel arbitration or his intent to seek a stipulation to which Zumper would be a

---

[4] Although the stipulation filed by Melo references only Trade House's (and not Zumper's) consent to the requested extension, Melo's counsel added the signature of Zumper's counsel to the extension stipulation.  *See* Dkt. No. 63.  In fact, Melo's counsel never requested Zumper's assent to the stipulation and never requested or received permission to add the signature of Zumper's counsel.  Shope Decl. ¶ 8.  Zumper did not raise this point at the time, as Melo was representing that he now consent to the motion to compel arbitration, and the additional five days of delay were immaterial.

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41 VOLUNTARY DISMISSAL

1   party, though Zumper certainly would have been amenable to the stipulation so described.

2   Shope Decl. ¶ 8.  The Court granted the second request for an extension, and ordered that the

3   proposed stipulation be filed by March 10, 2020.  Dkt. No. 64.

4   **_The Second Voluntary Dismissal_**

5         Before March 10, Melo's counsel had not contacted Zumper's counsel about the

6   stipulation that Melo had unilaterally promised to the Court.  Shope Decl. ¶ 9.  On the morning

7   of March 10, however, Melo's counsel emailed Zumper's lead counsel (but not any of the three

8   other attorneys who had filed appearances in the case) with a proposed stipulation.  Dkt. No. 69-

9   1.  The stipulation that Melo's counsel proposed was **_not_** the stipulation they had represented to

10   the Court that they would make and which the Court ordered him to make.  Instead of Melo

11   "consent[ing] to the Motion to Compel Arbitration as to Defendant Zumper, Inc.," the proposed

12   stipulation provided that the parties would stipulate to the dismissal without prejudice of Melo's

13   claims and Zumper would waive certain potential defenses. Dkt. No. 69-3.  While Melo's

14   proposed stipulation referred to the waiver of defense in connection with arbitration, it did not

15   purport to require arbitration or foreclose Melo from filing yet another lawsuit, either

16   concurrently with an arbitration or after withdrawing any arbitration without prejudice as

17   permitted under AAA rules.  *Id.*

18         Due to business travel commitments, Zumper's lead counsel was unable to respond to

19   Melo's proposed stipulation on March 10.  Shope Decl. ¶ 12.  The following morning, Melo's

20   counsel emailed Zumper's lead counsel (again omitting Zumper's three other attorneys of

21   record) to request a response to the email proposing the new stipulation.  *Id.* ¶ 13, Ex. F.

22   Zumper's counsel responded, apologized for the slow response, and stated that Zumper did not

23   agree to the proposed stipulation but would stipulate that the pending motion to compel

24   arbitration and to stay pending arbitration was granted (i.e., what Melo's counsel had promised

25   the Court six days earlier).  *Id.*  Melo's counsel, replied to Zumper's counsel to ask why Zumper

26   opposed a dismissal.  *Id.* ¶ 14, Ex. F.  Melo's counsel provided no reason for why he now

27   believed that dismissal was necessary rather than the stay Zumper had requested in its motion.

28

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41
VOLUNTARY DISMISSAL

1    *Id.* Nor did he demand an instant response. *Id.* Zumper's lead counsel did not respond

2    instantaneously due to other work commitments. *Id.* ¶ 14.

3        Zumper's counsel in any event did not believe that he was obligated to disclose his

4    reasons for opposing a stipulation of dismissal without prejudice, which in any event he believed

5    were obvious to Melo's counsel, who had reported extensive experience in class action litigation

6    and arbitration. Shope Decl. ¶ 14. Even more important, by voluntarily dismissing the case,

7    Melo would dodge entry of a binding decision that he was obligated to arbitrate his claims, and

8    relatedly, that it would permit him to file a new lawsuit, likely another class action, either

9    concurrently with his arbitration demand or after withdrawing the arbitration demand. *Id.* ¶ 11.

10   Zumper's counsel was also concerned that Melo's maneuver was intended to enhance arguments

11   against arbitration made by Trade House Data, and to avoid assignment of the judge in the

12   present case to any future proceedings related to the arbitration, such as confirmation or vacatur

13   of any arbitration award, assuming that Melo in fact pursued the arbitration. *Id.*

14       Four hours later that very same day, and without making any attempt to re-contact

15   Zumper's counsel or assert an emergency, at 1:56 p.m. Pacific Time, Melo's counsel filed the

16   notice of dismissal from which he now seeks relief. Dkt. No. 66. In the notice of dismissal,

17   Melo cited the specific rule and subsection on which he was relying (Rule 41(a)(1)(A)(i)), and

18   the procedural posture that permitted him to voluntarily dismiss the claims (that Zumper had not

19   yet served an answer or a motion for summary judgment). Dkt. No. 66. Unlike the voluntary

20   dismissal of Melo's prior suit against Zumper, the notice did not state whether the dismissal was

21   understood to be with or without prejudice. *Id.* The filing of the notice of dismissal operated by

22   itself to dismiss Melo's claims against Zumper; no action from the Court was necessary.

23   *Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1077 (9th Cir. 1999).

24       Shortly before filing the notice of dismissal, Melo filed a demand for arbitration with the

25   AAA. Dkt. No. 69-4. Contrary to the express requirements of the arbitration clause at issue,

26   Melo's counsel stated that the arbitration should be held in Northern Virginia rather than San

27   Francisco. *Id.* In serving Zumper by email, Melo's counsel requested that Zumper "confirm"

28

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41
VOLUNTARY DISMISSAL

agreement to the Virginia venue, even though Melo had not previously suggested that and Zumper's counsel had not so agreed. Shope Decl. ¶ 17.

After being alerted to the filing of the notice of dismissal, Zumper's counsel considered the ramifications of Melo's choice to voluntarily dismiss his claims for the second time – that the dismissal would operate as an adjudication on the merits. Fed. R. Civ. P. 41(a)(1)(B). Zumper's counsel promptly notified Melo's counsel of that point, and reminded them that the AAA Consumer Rules provide for shifting of certain expenses to the claimant in the case of frivolous claims. Shope Decl. ¶ 18. Zumper also rejected Melo's attempt to abrogate the agreement to venue in San Francisco. *Id.*

The following morning, Melo's counsel filed a "notice of withdrawal" of the previously filed notice of dismissal. Dkt. No. 67. In that filing, Melo's counsel stated that Melo would now seek to oppose Zumper's motion on the ground that, contrary to Judge Novak's holding, he had never agreed to arbitrate, notwithstanding his prior representations to the Court that he did so agree, and would seek a retroactive extension of time to oppose Zumper's motion to compel arbitration and to stay this case. *Id.* But because the filing of the notice of dismissal served to dismiss the claims against Zumper was self-effectuating under the authority noted above, the "notice of withdrawal" was a nullity. Melo's counsel apparently realized as much and, later the same day, filed the present motion seeking to vacate the dismissal pursuant to Rule 60(b).

## ARGUMENT

### I. MELO'S VOLUNTARY DISMISSAL WAS NOT REQUIRED BY ANY ULTIMATE AGREEMENT TO ARBITRATE.

Contrary to Melo's suggestion (p. 8), there was no need for his claims against Zumper to be dismissed so that the arbitration could begin. Nor was there ever any agreement that required dismissal of his case. To the contrary, the Federal Arbitration Act provides that, upon a finding that a claim pending in federal court is subject to arbitration, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. While it is true that the Ninth Circuit has held that a district court has discretion to

dismiss rather than stay a case upon a finding that the claims are subject to arbitration, it has a "preference for staying an action pending arbitration rather than dismissing it," *MediVas, Ltd. Liab. Co. v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014); *see also Gonzalez-Torres v. Zumper, Inc.*, 2019 U.S. Dist. LEXIS 207390 (N.D. Cal. Dec. 2, 2019) (staying pending arbitration related case against Zumper).

And while a plaintiff's agreement to begin an arbitration may moot a motion to compel arbitration, it does not, as Melo suggests (p. 5), moot a motion to stay court proceedings pending the arbitration. After the arbitration is completed, the parties return to court in order to seek to confirm or vacate the award. 9 U.S.C. §§ 9-10. Assuming that an arbitrator's award were to be confirmed, there would then be a final judgment ending the case.

Melo's decision to file a demand for arbitration also did not moot Zumper's motion, because it, did not foreclose the possibility of his commencing yet another suit. In particular, the AAA rules permit withdrawal without prejudice. AAA Consumer Arbitration Rule R-8 (permitting changes to claims as of right before the appointment of an arbitrator). Particularly given Melo's litigation history, there was every reason to believe that he might drop his arbitration and assert a new class action somewhere else, or even pursue both concurrently.

Even if Melo accepted the necessity of arbitration, he resisted the specific provisions of Zumper's agreement, such as venue in San Francisco (which he continues to resist in favor of Virginia), *see* Dkt. No. 69-4, the contractual requirement of individual rather than class proceedings, and application of either the Commercial Rules (which his counsel asserted he could not afford) or the Consumer Rules (which his counsel asserted would not provide for a "competent" arbitrator), *see* Shope Decl. ¶ 6, Ex. D. Without the entry of the order to compel arbitration and to stay, Melo could more easily argue that he was not actually bound by the pertinent provisions of the agreement requiring such venue and rules.

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41
VOLUNTARY DISMISSAL

1
2

## II.    ZUMPER IS NOT "GOING BACK ON ITS AGREEMENT TO ARBITRATE" OR "PLAYING PROCEDURAL GAMES."

3      The heart of Melo's ostensibly equitable argument is the notion (p. 7) that "Zumper has

4  agreed to arbitrate, and would now go back on that agreement because of Plaintiff's Counsel's

5  misstep in filing the notice of dismissal."  Nothing could be more false.  Zumper has at every

6  turn sought to enforce the agreement to arbitrate and Melo has at every turn sought to evade it.

7  Zumper remains willing to arbitrate Melo's claims, including pursuant to the AAA Consumer

8  Rules as agreed by the parties.  But Zumper is not willing to waive any defenses that it may have

9  in the arbitration, including that the claims have become frivolous as a result of the procedural

10  tactics Melo chose to employ outside of the arbitration.

11      For purposes of the present motion, all that Zumper has said is that, based on Melo's two

12  voluntary dismissals, it will assert as a defense to the claim in the arbitration that the claim is

13  now barred under the doctrine of *res judicata* pursuant to the provisions of Fed. R. Civ. P. 41.

14  *See* Shope Decl. ¶ 18, Ex. F.  Whether Zumper succeeds in that argument is a point that will

15  necessarily be decided by the arbitrator.  Melo recognizes as much, as he explicitly seeks (p. 7)

16  the vacatur under Rule 60(b) so that he may arbitrate "without facing an uphill battle on the issue

17  of *res judicata*."  *See also* Melo Brief at 9 ("Plaintiff faces a genuine risk that his claims will be

18  lost in arbitration because of preclusion." (emphasis added)).

19      Melo's accusation that Zumper is "playing procedural games" is also meritless.  The

20  Rules of Civil Procedure are not a "procedural game."  *See Perrine v. United States*, 2016 U.S.

21  Dist. LEXIS 194988, at *7 (S.D. Cal. Mar. 14, 2016) ("The Federal Rules of Civil Procedure are

22  not a 'machination' (*i.e.*, scheme or plot) to trap the unwary.  They are the rules that govern the

23  procedure in all civil actions and proceedings in the United States District Courts.") (denying

24  motion to vacate voluntary dismissal).  The "two dismissal rule" codified in Rule 41(a)(1)(B) is

25  also not a mere trap for the unwary; it serves to "prevent delays and harassment caused by

26  plaintiffs securing numerous dismissals without prejudice."  9 C. Wright & A. Miller § 2368.

27
28

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41
VOLUNTARY DISMISSAL

Harassment through multiplied and protracted proceedings has transparently been Melo's goal. As recited above, Melo filed a suit against Experian over his order from Zumper but without naming Zumper. He filed his first action against Zumper in federal court notwithstanding his agreement to arbitrate. He also chose to omit related claims against Trade House Data from that action, despite having learned of its role in his prior case against Experian, potentially preserving his ability to bring those claims later in a separate action into which he could draw Zumper through non-party discovery requests. Then, after Zumper moved to stay the proceedings pending arbitration and with his response thereto overdue, Melo voluntarily dismissed his claims.

Seven months later, he refiled his action in the same court that lacked authority to directly compel arbitration, forcing Zumper to file two motions: a motion to transfer and stay proceedings (which Melo unsuccessfully opposed), followed by a motion in this Court to compel arbitration and stay proceedings. Throughout all stages of the proceedings, Melo regularly sought and received extensions of time, including, in one instance, when he filed and then withdrew a brief in opposition to arbitration. Then, on the day that his stipulation consenting to Zumper's motion compel arbitration and stay proceedings was due, Melo reversed course and suggested Zumper should agree to dismiss without prejudice (rather than stay) the claims and waive potential defenses.[5]

When Zumper very reasonably refused to agree to that alternate course, Melo chose to voluntarily dismiss his claims rather than pursue any number of available options to him. These included: (i) filing a statement of non-opposition to Zumper's motion as called for by Local Rule

---

[5] Zumper is also not at fault for any time pressure that Melo suggests led to his counsel's alleged failure to consider the effect of Rule 41(a)(1)(B). It was Melo's counsel who waited until the day the stipulation was due to make a proposal to Zumper. It was also Melo's counsel who, without explanation, sought to secure a stipulation entirely different from the stipulation Melo, days earlier, had represented he would make. It was Melo's counsel who chose to omit three of Zumper's four attorneys of record on the communications regarding the proposed stipulation. It was Melo's counsel who made no effort to re-contact Zumper's counsel after only four hours to accept the stipulation to the motion to compel arbitration and to stay pending arbitration, even though it was only early afternoon in California and before the end of the business day on the East Coast. And, as noted, in any case Melo could simply have advised the Court that he consented to Zumper's motion, and did not need a "stipulation" from Zumper to do so.

7-3(b), (ii) making the stipulation to the motion to compel arbitration and to stay that he had promised to the Court, either unilaterally or by proposing that Zumper join, (iii) seeking a further extension of time, or even (iv) moving for the contested dismissal he now proposes filing.  There was certainly no need to act instantaneously, other than Melo's transparent desire to avoid a binding judicial order that arbitration was the sole means of resolving his claims.  And while Melo's motion doesn't explain, much less provide evidence of, why his attorneys believed that it made sense to do so, the motion is explicit (p. 5) that "Plaintiff's Counsel determined the best course was to voluntarily dismiss under Rule 41."  In other words, they made a tactical decision.

Melo's procedural tactics have not been without consequence to Zumper.  Zumper has been forced to expend considerable time, effort, and money just to enforce the agreement to arbitrate that Melo had made with Zumper and participate in three lawsuits and now an arbitration.

## III.     THERE IS NO BASIS TO VACATE THE DISMISSAL UNDER FED. R. CIV. P. 60(B)(1).

Ultimately, whatever the motives of Melo's counsel may have been, their decision to file a second notice of dismissal is not the type of "mistake, inadvertence, surprise, or excusable neglect" for which Rule 60(b)(1) relief may be granted.

### A.   Melo Has Not Provided Admissible Evidence and Therefore Has Not Carried His Burden to Prove "Mistake" or "Excusable Neglect."

As the moving party, Melo bears the burden to provide that he is entitled to have his notice of voluntary dismissal vacated.  *Atchison, T. & S. F. R. Co. v. Barrett*, 246 F.2d 846, 849 (9th Cir. 1957).  Melo does not clearly argue that the notice was within the meaning of "mistake" under Rule 60(b)(1), but to the extent that he does so, he is obligated to prove as much with admissible evidence, just as he is obligated to support his explicit argument that his filing was made in "excusable neglect" with the same.  Melo has not done so.  He has not filed a declaration from his counsel explaining what they intended to do, why they intended to do it, how it was neglectful, and why any neglect should be excused.

1    Local Rule 7-5(a) is explicit that "Factual contentions made in support of or opposition to

2    any motion must be supported by an affidavit or declaration and by appropriate references to the

3    record."  The soundness of this rule is demonstrated by the plaintiff's brief in this case which, as

4    demonstrated above, contains multiple incorrect statements of fact. "The unsworn statements in

5    plaintiff's memorandum are not evidence.  These are unverified statements.  Unsworn statements

6    in the body of a motion or supporting memorandum cannot be considered evidence." *Beverly v.*

7    *Network Sols., Inc.*, 1998 U.S. Dist. LEXIS 20453, at *13 (N.D. Cal. Dec. 30, 1998).  The

8    motion to vacate must be denied on this basis alone.

9            **B.    There Was No "Mistake" under Rule 60(b)(1) as a Matter of Law.**

10    Even accepting the unsworn assertions of fact in Melo's brief (the Court should not),

11    there is no basis for vacatur.  While Melo uses (pp. 8-9) the words "misstep" and "mistakenly" to

12    describe the decision to file a notice of voluntary dismissal, he does not affirmatively argue that

13    his decision to voluntarily dismiss his claims for the second time was a "mistake" within the

14    meaning of Rule 60(b)(1).  This is understandable because, as noted, he admits (p. 5) that

15    "Plaintiff's Counsel determined the best course was to voluntarily dismiss under Rule 41."

16    Melo's counsel's admittedly deliberate decision to file the second voluntary dismissal was

17    therefore not a "mistake" contemplated by Rule 60(b)(1).  In *Perrine v. United States*, the

18    plaintiffs sought relief from a second voluntary dismissal.  2016 U.S. Dist. LEXIS 194988, at *3-

19    4 (S.D. Cal. Mar. 14, 2016).  Plaintiffs' counsel asserted that "he was unaware of the two

20    dismissal rule," and that the second dismissal was therefore the result of mistake, inadvertence,

21    surprise, or excusable neglect.  *Id.* at *4.  The court denied the motion, holding that "Plaintiffs'

22    counsel's failure to read the very rule of civil procedure that he cited in both prior dismissals is

23    not the sort of mistake or inadvertence Rule 60(b) is intended to remedy." *Id.* at *6.  The court

24    also observed that attorneys "are presumed to understand the rules they are invoking in

25    litigation" and that "Plaintiffs did not inadvertently or mistakenly file the Second Dismissal; they

26    (and their lawyer) were simply ignorant of the consequence of that filing and now regret it." *Id.*

27

28

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41
VOLUNTARY DISMISSAL

1      Other district courts in this Circuit have reached the same conclusion and denied Rule

2  60(b) relief in similar circumstances.  *See Ferretti v. Beach Club Maui, Inc.*, 2018 U.S. Dist.

3  LEXIS 129849, at *14-15 (D. Haw. Aug. 2, 2018); *Cabot Golf Cl-Pp 1, LLC v. Cabot Golf Cl*

4  *Pp Acquisition, LLC*, 2013 U.S. Dist. LEXIS 203106, at *8 (C.D. Cal. Dec. 17, 2013) ("Plaintiffs

5  deliberately chose to voluntarily dismiss this action under Rule 41(a)(1) as part of a strategic

6  litigation decision.  Although Plaintiffs may have come to regret their decision through

7  subsequently-gained knowledge that corrects the erroneous legal advice of counsel, this is not the

8  type of mistake that is contemplated under Rule 60(b)(1)." (internal quotation omitted)).

9      Other circuit courts have held the same.  *See, e.g.*, *Edwards-Brown v. Crete-Monee 201-*

10  *U Sch. Dist.*, 491 Fed. App'x 744, 747 (7th Cir. 2012) ("it's hard to see how relief under Rule

11  60(b) would ever be available for a plaintiff like Brown who has made a conscious, deliberate

12  decision to dismiss a lawsuit"); *Am. Lifeguard Ass'n v. Am. Red Cross*, 1994 U.S. App. LEXIS

13  8430, at *7-8 (4th Cir. Apr. 22, 1994) ("By granting [plaintiff] relief from a final adjudication on

14  the merits, which resulted solely from [plaintiff's]'s deliberate choice to voluntarily dismiss both

15  of its pending cases, the district court abused its discretion.  [Plaintiff] chose its strategy and

16  dismissed its suits; it cannot now revoke the effect of those dismissals in an attempt to revisit its

17  original claims.").[6]

18      In *Nelson v. Napolitano*, a case on which Melo attempts to rely (p. 7), the Seventh Circuit

19  affirmed the lower court's denial of a 60(b) motion after the plaintiffs voluntarily dismissed their

20

21

---

22  [6] *See also McCarthy v. Consulate Health Care*, 2016 U.S. Dist. LEXIS 57502, at *7 (N.D. Fla.
   Mar. 29, 2016) ("because [plaintiff] has not demonstrated a basis for reopening this case beyond

23  undoing her tactical decision, relief should be denied under Rule 60(b)(1)"); *Nelson v. Chertoff*,
   2010 U.S. Dist. LEXIS 45368, at *9 (N.D. Ill. May 10, 2010) ("A voluntary, affirmative, tactical

24  decision does not rise to the level of 'mistake, inadvertence, surprise, or excusable neglect'
   warranting relief under Rule 60(b)(1), nor does it justify relief under Rule 60(b)(6)."); *Braswell*

25  *v. Invacare Corp.*, 760 F. Supp. 2d 679, 685 (S.D. Miss. 2010) ("That [plaintiff], or her attorney,
   may not have fully considered the potential consequences of the decision to [voluntarily dismiss

26  her claims] is no basis for relief under Rule 60(b)."); *Graham Kandiah, LLC v. JPMorgan Chase*
   *Bank, N.A.*, 2009 U.S. Dist. LEXIS 51499, at *8 (S.D.N.Y. June 18, 2009) ("where Rule

27  41(a)(1)(B) is clear on its face, [pro se plaintiff]'s ignorance that the filing of her second
   dismissal would result in the dismissal of her action with prejudice is not grounds for relief").

28

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41
VOLUNTARY DISMISSAL

claims.  657 F.3d 586, 591 (7th Cir. 2011).  The alleged "mistake" at issue was the failure of the plaintiffs' attorney to understand the effect that voluntary dismissal would have on the statute of limitations.  *Id.* at 590-91.  The Seventh Circuit upheld the lower court's decision to deny relief for what it deemed "a tactical decision to voluntarily dismiss."  *Id.* at 591.

Melo has not offered any cases supporting a different result.  Melo cites (p.7) just three cases in which a court even considered granting Rule 60(b) relief after a voluntary Rule 41(a)(1) dismissal, none of which granted relief under Rule 60(b)(1) on the basis of an alleged mistake or neglect.  Two of those cases denied the request for relief.  *See Albert v. Ameris Bank*, 517 Fed. App'x 900, 907 (11th Cir. 2013) (affirming denial of 60(b) motion without any pertinent analysis of either Rule 60(b)(1) or 60(b)(6)); *Nelson*, 657 F.3d at 591 (discussed above).  The third case, *Yesh Music v. Lakewood Church*, was decided under Rule 60(b)(6), not Rule 60(b)(1), and, as discussed below, is not analogous to the present case.[7]

This Court should deny Melo's request for the same and further reasons. Melo's brief asserts (p.4) that his counsel "neglected to recognize the consequences of the second voluntary dismissal under Rule 41(a)(1)(A)(i)."  Even accepting that as true (the Court should not do so given the absence of sworn testimony discussed above), there was no "mistake" within the meaning of Rule 60(b)(1), because plaintiff's counsel did exactly what they intended to do, albeit with an unwelcome legal result.  Melo's claim in his brief (p. 8) that he "mistakenly filed" the second notice of dismissal is, furthermore, directly contradicted by his earlier assertion (p. 5) that "Plaintiff's Counsel determined the best course was to voluntarily dismiss under Rule 41."

Melo does not assert that his attorneys accidentally filed the wrong document or that he intended the dismissal to refer to different parties or claims.  *Cf. Noland v. Flohr Metal Fabricators, Inc.*, 104 F.R.D. 83, 88 (D. Alaska 1984) (granting Rule 60(b) relief where plaintiff inadvertently dismissed claims against all defendants and then filed amended notice clarifying

---

[7] Melo's citation (p. 6) to *Fowler v. Wells Fargo Bank, N.A.* is also inapposite.  While *Fowler* refers to the "neglect" prong of Rule 60(b)(1) as encompassing "inadvertent mistake," 2019 U.S. Dist. LEXIS 50839, at *2 (N.D. Cal. Mar. 26, 2019), that case involved the failure to act (failure to seek leave to amend to assert new claims) rather than a deliberate action that the party later came to regret, *id.*

1  that dismissal was only intended as to one defendant).  He does not articulate any mistake or

2  inadvertence other than the failure to consider the consequences of filing the second notice of

3  dismissal.[8]

4       Melo's decision to file the notice of dismissal was no mistake.  It was a deliberate choice.

5  And while the Court need not decipher the rationale behind that choice, there are any number of

6  tactical purposes that may have motivated the desire to have the claims dismissed prior to the

7  entry of an order to compel arbitration and stay proceedings.  *See* Shope Decl. ¶ 11 (articulating

8  reasons why Zumper declined to agree to dismissal).  Even now, Melo seeks to avoid the

9  granting of Zumper's arbitration motion, instead seeking to have the case dismissed through a

10  contested motion for dismissal.  Dkt. No. 69-5.  "For purposes of subsection (b)(1), parties

11  should be bound by and accountable for the deliberate actions of themselves and their chosen

12  counsel.  This includes not only an innocent, albeit careless or negligent, attorney mistake, but

13  also intentional attorney misconduct."  *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101

14  (9th Cir. 2006); *see also Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*, 139 F.3d 664, 666

15  (9th Cir. 1997) ("attorney error is insufficient grounds for relief under both Rule 60(b)(1) and

16  (6)").

17       **C.  There Was No "Excusable Neglect" under Rule 60(b)(1).**

18       As a further ground for relief, Melo attempts to recast his attorney's failure to read or

19  understand the Federal Rules of Civil Procedure as "excusable neglect."  Specifically, Melo

20  claims (p. 4) that "In Counsel's haste to meet the already-expired deadline, it [sic] neglected to

21  recognize the consequences of the second voluntary dismissal under Rule 41(a)(1)(A)(i)."

22       *1.  Melo provides no evidence of any purported excusable neglect.*

23       This argument fares no better.  Again, Melo has failed to establish with sworn testimony

24  the purported factual predicate that his counsel's notice of voluntary dismissal was driven by

25

26  _____

[8] Zumper notes that this is the second time in the course of this case that Melo's counsel has
27  claimed that a filing was made by mistake without any attempt to explain how the "mistake"
supposedly transpired.  *See* Dkt. No. 18.
28

1    "haste" resulting from a perceived concern that he had failed to provide a stipulation, as he

2    repeatedly asserts in his brief (pp. 4, 5, 8).  This omission suffices for denial.

3           In any case, the proffered excuse does not hold water.  The only deadline that this Court

4    had set was the deadline to file a stipulation (proposed by Melo) that Melo would consent to

5    Zumper's motion to compel arbitration and stay proceedings.  *See* Dkt. No. 64.  Melo could have

6    made the stipulation unilaterally, and in any event Zumper's counsel informed Melo's counsel

7    that Zumper would agree to such a stipulation before Melo filed his notice of voluntary

8    dismissal.  Shope Decl. ¶ 13.  Zumper, moreover, had repeatedly undertaken in writing to

9    arbitrate under either the AAA Consumer Rules, which Melo had said in his motion that would

10   accept (though he made no such proposal in his alternative proposed stipulation, which Zumper

11   rejected).  Shope Decl. Ex. E.  Alternatively, Melo could have given notice of his assent to the

12   arbitration motion, or moved for an extension of time, or made a motion for an order of dismissal

13   without prejudice, though his counsel knew that would be opposed as Zumper would not so

14   stipulate,  Transparently the only urgency was avoiding the Court's grant of the motion to

15   compel arbitration and for stay when, after Judge Novak's ruling that Melo was bound by

16   Zumper's terms and he had not submitted a brief in opposition after multiple extensions, the

17   hammer was plainly about to come down.

18          There is also no evidence that Melo's counsel actually believed, as the motion falsely

19   implies (p. 8), that the dismissal was somehow a necessary part of going forward with the

20   arbitration,  As noted above, it is routine for cases to be stayed while the parties engage in

21   arbitration pursuant to an order to compel arbitration.  Such a stay is explicitly provided for by

22   the Federal Arbitration Act.  9 U.S.C. § 3, is "preferred" by the Ninth Circuit, *MediVas, Ltd.*

23   *Liab. Co.*, 741 F.3d at 9, and Melo's counsel were well aware of this Court's stay in the

24   *Gonzalez-Torres* case concurrent with Mr. Gonzalez-Torres' pursuit of a demand before the

25   American Arbitration Association.  Shope. Decl. 5.

26          There is also no admissible evidence that Melo's counsel were not aware of the two-

27   dismissal rule.  Given the reference in the proposed but rejected stipulation to dismissal without

28

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41
VOLUNTARY DISMISSAL

prejudice, there is a distinct possibility that they just hoped that Zumper would not think of the two-dismissal rule.  If Melo thought that he could unilaterally obtain a dismissal without prejudice, there was no reason for him to demand one by stipulation with Zumper.

In sum, the entire "excusable neglect" argument must be rejected because Melo has again not borne his burden to prove facts supporting his motion with admissible evidence.

### 2.   There was no "excusable neglect" as a matter of law.

But even if one were to accept Melo's patently false and unsworn narrative(s) of why his attorneys filed the notice of voluntary dismissal (the Court should not), the argument fails as a matter of law.  The "excusable neglect" prong of rule 60(b)(1) is not a backdoor to avoid the "mistake" analysis, discussed above, which precludes relief for attorney error or unwise strategic decisions; it addresses situations such as where a party fails to comply with a deadline.  *See Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009).  The cases cited by Melo do not hold otherwise.  *See Fowler v.Wells Fargo Bank, N.A.*, 2019 U.S. Dist. LEXIS 50839, at *2 (N.D. Cal. Mar. 26, 2019) (addressing counsel's failure to request leave to amend complaint); *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1996) (remanding to determine whether late filing of opposition by *pro se* plaintiff was excusable); *Cotti v. City of San Jose*, 2019 U.S. Dist. LEXIS 150803 (N.D. Cal. Sep. 4, 2019) (considering plaintiff's failure to oppose motion to dismiss).

Put another way, while it may have been "negligent" of Melo's counsel to fail to read Rule 41(a)(1)(B) or realize the consequences of voluntarily dismissing the claims against Zumper for the second time, any such negligence is not the "neglect" within Rule 60(b)(1).

### 3.   Whether the failings of Melo's counsel were "excusable" is irrelevant.

Accordingly, Melo's attempt to articulate why the decision is "excusable" is not relevant to the present motion.  Whether the actions of Melo's counsel are excusable is an issue that should be taken up in malpractice litigation.  *See Latshaw*, 452 F.3d at 1101 (attorney mistakes, whether innocent, careless, negligent or intentional, "are more appropriately addressed through malpractice claims" than through Rule 60(b)(1) motions).

*4.   Melo has not proven good faith.*

Even if an analysis of whether any neglect was "excusable" were appropriate, Melo again does not satisfy the legal test.  He necessarily asserts (p. 8) that he has acted in "good faith." Apart from his continuing failure even to try to demonstrate as much with sworn evidence, the record shows ample bad faith.  As discussed above, that record shows a lengthy history of false, misleading, and contrived claims, procedural gamesmanship in three lawsuits, unexplained assertions of "mistake" to prolong proceedings and attempt to avoid arbitration, reversals of course, and an unfulfilled promise to the Court of agreement to arbitration followed by an attempt to avoid such an order, a preposterous demand for million-dollar damages based on procedural nuisance rather than any actual injury much less liability, all followed by false and misleading statements in his present brief.  Melo has not borne his burden to prove his good faith so as to justify vacatur under Rule 60(b)(1).

## IV.   MELO HAS NOT ESTABLISHED THE EXTRAORDINARY CIRCUMSTANCES REQUIRED FOR RULE 60(b)(6) RELIEF.

Melo is also not entitled to relief from the consequences of his decision pursuant to Rule 60(b)(6).  Rule 60(b)(6) permits relief for "any other reason that justifies relief."  But Rule 60(b)(6) relief requires a showing of "extraordinary circumstances."  *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005).  Rule 60(b)(6) is "used sparingly as an equitable remedy to prevent manifest injustice."  *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993).  As with his arguments under Rule 60(b)(1), Melo's arguments fail as a matter of fact and law.

The lack of any sworn testimony persists.  The argument is also defective as a legal matter.  When, as here, a motion for Rule 60(b)(6) relief is premised on a supposed mistake by an attorney, the petitioner must show that the attorney's mistake constituted gross negligence. *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1169 (9th Cir. 2002).  The Ninth Circuit analogized the "gross negligence" required to justify Rule 60(b)(6) relief to the type of attorney error so egregious that it would warrant reversal of a criminal conviction.  *Id.* at 1170.  But neither Melo

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41 VOLUNTARY DISMISSAL

nor any of his attorneys allege gross negligence by Melo's counsel; they rather argue that the filing of the second notice of dismissal was "excusable" in the request for Rule 60(b)(1) relief. Melo's failure even to argue, not to mention present admissible evidence of, gross negligence by his counsel alone dooms his motion. *See Cotti v. City of San Jose*, 2019 U.S. Dist. LEXIS 150803 at *11 (N.D. Cal. Sept. 4, 2019) (denying motion to vacate judgment under Rule 60(b) where plaintiff did not argue that failure to respond to motion to dismiss was gross negligence).

Instead of trying to articulate the form of attorney gross negligence that might warrant Rule 60(b)(6) relief, Melo argues (p. 9) that the risk that "his claims will be lost in arbitration because of preclusion" "would almost certainly qualify as extraordinary circumstances."  The argument, for which Melo offers no authority in support, that the operation of the "two dismissal rule" would qualify as extraordinary circumstances is astounding.  The rule is expressly codified in the Rules of Civil Procedure.  *See* Fed. R. Civ. P. 41(a)(1)(B).  The "two dismissal rule" is so *ordinary* as to have a well-known short-hand name that Melo repeatedly employs in his motion. Application of the Federal Rules of Civil Procedure is not an" extraordinary circumstance."  *See Perrine*, 2016U.S. Dist. LEXIS 194988, at *7 ("Counsel is expected to know the rules.  Plaintiffs chose to file two prior dismissals, citing the exact rule explaining that the second of those dismissals would be on the merits.  There is nothing absurd about enforcing the rule as it clearly and unambiguously provides.").  "To allow relief from the two dismissal rule under Rule 60(b) would effectively render [Rule 41(a)(1)(B)] meaningless because any plaintiff seeking to avoid the implications of the rule presumably did not intend for their second voluntary dismissal to be on the merits." *Id.* at *6.

Melo admits (p. 4 n.1) that, to obtain relief under Rule 60(b)(6), he must prove extraordinary circumstances beyond his control.  *See Cmty. Dental Servs.*, 282 F.3d at 1170 n.11. Here, Melo had complete control; he did not need to file the notice of voluntary dismissal, but rather, could have simply assented to Zumper's motion to compel arbitration and stay pending arbitration, moved for an extension of time, or made any number of other motions.

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41
VOLUNTARY DISMISSAL

1    Melo cites just one case in which a court found that a second voluntary dismissal

2    constituted the type of "extraordinary circumstances" required to justify Rule 60(b)(6) relief.

3    That case, *Yesh Music v. Lakewood Church*, involved unique equitable circumstances that are not

4    apposite here.  *See* 727 F.3d 356 (5th Cir. 2013).  In *Yesh Music*, the plaintiff first filed a lawsuit

5    in Texas federal court, voluntarily dismissed that action pursuant to Federal Rule 41(a)(1)(A)(i),

6    then refiled one day later in a New York federal court in order to substitute a newly formed LLC

7    as the party in interest.  *Id.* at 358.  After the defendant objected to the maneuver by claiming that

8    venue in New York would be burdensome, the parties stipulated, on the record, in the Texas

9    court (which had retained limited jurisdiction to address a request by the defendant for

10   reimbursement of expenses), that "the case will proceed here and not in New York."  *Id.*  The

11   plaintiff then dismissed the New York suit pursuant to Federal Rule 41(a)(1)(A)(i).  *Id.*  The

12   plaintiff filed a Rule 60(b) motion to reinstate the first-filed Texas action, which the defendant

13   opposed, notwithstanding the earlier stipulation.  *Id.*  The district court in Texas granted the

14   motion, finding that that it would be unjust to deny the motion "because the parties had agreed to

15   dismiss the New York action and reinstate the Texas action."  *Id.* at 358-59.  The Fifth Circuit

16   upheld the decision, and found that it was not an abuse of discretion to grant the relief under

17   Rule 60(b)(6).  *Id.* at 363.  In considering the issue, the Fifth Circuit noted that "Rule 60(b)(6)

18   requires a showing of manifest injustice and will not be used to relieve a party from the free,

19   calculated, and deliberate choices he has made" and that "Rule 60(b)(6) should not be used to

20   undo the damage done by a poor strategic decision."  *Id.*

21   The circumstances in *Yesh Music* are not comparable to this case.  Unlike the defendant

22   in *Yesh Music*, Zumper never consented to the dismissal that Melo sought and unilaterally

23   accomplished.  To the contrary, Zumper expressly declined to stipulate to dismissal without

24   prejudice because of all of the potential adverse consequences to it that might follow if Melo

25   were not subject to a binding judicial holding or stipulation that his claims were to be decided

26   exclusively in arbitration.  Shope Decl. ¶ 11; Dkt. No. 69-2.  And unlike as in *Yesh Music*, the on

27   the record agreement in this case was that Melo would consent to Zumper's motion to compel

28

DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41
VOLUNTARY DISMISSAL

arbitration and stay the proceedings, not that the parties would stipulate to dismissal.  Dkt. No.

63-1, ¶ 6; Dkt. No. 63-2; *cf. Catbridge Mach., LLC v. Cytec Engineered Materials*, 2012 U.S.

Dist. LEXIS 100271, at *13 (D.N.J. July 18, 2012) (Rule 60(b)(6) relief appropriate where "the

parties made a prior agreement to follow through with a voluntary dismissal in order to pursue

arbitration").

## CONCLUSION

For the reasons stated above, defendant Zumper, Inc. respectfully requests that the Court

deny Melo's motion to vacate the voluntary dismissal of his claims.

DATED:  March 26, 2020                        Respectfully submitted,


By:      */s/  John A. Shope*
         John A. Shope (admitted pro hac vice)
         Kevin J. Conroy (admitted pro hac vice)
         **FOLEY HOAG LLP**
         155 Seaport Boulevard
         Boston, MA 02210-2600
         Telephone: (617) 832-1000
         Facsimile: (617) 832-7000
         jshope@foleyhoag.com
         kjconroy@foleyhoag.com

         David M. Goldstein (SBN 142334)
         David C. Brownstein (SBN 141929)
         **FARMER BROWNSTEIN**
         **JAEGER & GOLDSTEIN LLP**
         235 Montgomery Street, Suite 835
         San Francisco, CA 94104
         Telephone: (415) 795-2050
         Facsimile: (415) 520-5678
         dgoldstein@fbj-law.com
         dbrownstein@fbj-law.com


         Attorneys for Defendant Zumper, Inc.

5112595.14