JOHN A. SHOPE (admitted pro hac vice)
KEVIN J. CONROY (admitted pro hac vice)
**FOLEY HOAG LLP**
155 Seaport Boulevard
Boston, MA 02210
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
jshope@foleyhoag.com
kjconroy@foleyhoag.com

DAVID M. GOLDSTEIN (State Bar No. 142334)
DAVID C. BROWNSTEIN (State Bar No. 141929)
**FARMER BROWNSTEIN JAEGER & GOLDSTEIN LLP**
235 Montgomery Street, Suite 835
San Francisco, CA 94104
Telephone: (415) 795-2050
Facsimile: (415) 520-5678
dgoldstein@fbj-law.com
dbrownstein@fbj-law.com

Attorneys for Defendant
ZUMPER, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ERNEST MELO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZUMPER, INC. & TRADE HOUSE DATA,<br><br>Defendants. | **Case No. 4:20-cv-00714-PJH**<br><br>PROPOSED CLASS ACTION<br><br>[Assigned to the Hon. Phyllis J. Hamilton]<br><br>**DECLARATION OF JOHN A. SHOPE IN SUPPORT OF DEFENDANT ZUMPER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM RULE 41 VOLUNTARY DISMISSAL** |

# DECLARATION OF JOHN A. SHOPE

I, John A. Shope, affirm that the following statements are true and correct as a matter of my personal knowledge:

1. I am an attorney admitted to practice *pro hac vice* in this matter, and counsel of record for the defendant in the above-captioned case. From the course of my representation of Zumper, Inc. in this matter, I have personal knowledge of the matters stated herein.

2. After this case was transferred to the Northern District of California, Zumper made an administrative motion to request that this case be deemed related to a similar case previously filed against Zumper in this District (*Gonzalez-Torres v. Zumper*, Case No. 4:19-cv-02183-PJH), based upon, among other things, Mr. Melo's reliance in briefing on an affidavit filed in that case. In accordance with the local rules, before making the motion, I contacted Mr. Melo's counsel by email on January 30, 2020. Leonard Bennett, one of at least four attorneys in the same firm who have been representing Mr. Melo, responded without explanation that the motion was "unnecessary" because Mr. Melo would "arbitrate the case in California." After I noted by reply email that the motion was necessary because Melo had never stipulated on the record that the case is subject to arbitration (which Melo had actively opposed in recent motion practice), Mr. Bennett never responded. Attached hereto as Exhibit A is a true and accurate copy of the chain of emails between Mr. Bennett and myself on January 30, 2020.

3. The Court granted Zumper's administrative motion and deemed this case related to that of Mr. Gonzalez-Torres and the case was reassigned to Judge Hamilton.

4. Given Mr. Melo's continued failure to agree to arbitration on the record, on February 6, 2020, Zumper filed a motion to compel arbitration and stay proceedings. Dkt. No. 52. The motion was based on the terms and conditions on the Zumper website to which, as Judge Novak held while the case was pending in the Eastern District of Virginia, Mr. Melo had agreed when he created a Zumper account. Because the Zumper terms apply to all users of the website, including landlords and real estate brokers, the arbitration clause in the terms specifies the Commercial Rules of the American Arbitration Association. However, under AAA rules, in

consumer cases the AAA has discretion to apply its Consumer Rules (which make the company absorb the lion's share of the expense) notwithstanding an agreement's selection of other rules. *See* AAA Commercial Rule R-1*; AAA Consumer Rule R-1(a)(4). Attached hereto as Exhibit B is a true and accurate copy of an excerpt of the AAA Commercial Rules showing Rule R-1*. Attached hereto as Exhibit C is a true and accurate copy of an excerpt of the AAA Consumer Rules showing Rule R-1(a)(4).

5. In a telephone conference on Wednesday, February 26, 2020, Craig Marchiando, another attorney representing Mr. Melo, informed me that Mr. Melo would oppose the motion to compel arbitration on the grounds that the AAA Commercial Rules were unconscionable, but proposed instead that the parties agree to arbitration under the auspices of JAMS rather than the AAA, with expenses to be borne by Zumper. I noted that I was disinclined to agree to JAMS due to its comparatively greater expense, but would confirm that position. I noted, however, that the AAA could apply the Consumer Rules, which are less expensive for claimants than the Commercial Rules, and that Zumper would agree to the use of the Consumer Rules, as were being invoked by Mr. Gonzalez-Torres in his related arbitration claim against Zumper without opposition by Zumper.

6. After I returned from a business trip the previous week, on Monday, March 2, 2020, I called Mr. Marchiando to confirm Zumper's opposition to his proposal of JAMS arbitration, but got his voicemail and left a message for him to call me. At 8:48 p.m. Eastern time that evening, he emailed me to request that I respond by email as he anticipated being unable to return my call any day that week. The next morning, I emailed him that Zumper would not agree to JAMS arbitration. I also reiterated that in this case Zumper would agree to arbitration with Mr. Melo under the Consumer Rules, thus avoiding his stated concerns about the cost of arbitration under the Commercial Rules in the parties' agreement. One of Mr. Melo's other counsel, Leonard Bennett, responded by email with his opinions that the Commercial Rules were too expensive for his client even though costs would be awarded in the event of victory, and that the Consumer Rules would not permit appointment of a competent arbitrator. In reply, I

reiterated the Zumper's willingness to arbitrate under either the AAA Commercial Rules or the Consumer Rules, but not a hodgepodge of different rules that Mr. Bennett believed would favor his client.  When Attorney Bennett suggested that Zumper was somehow deviating from the parties' agreement, I noted that he should review the AAA rules providing for application of the Consumer Rules in cases involving consumers irrespective of the parties' agreement selecting other rules.  Attorney Bennett did not respond and, as best I could discern, there was no agreement to Zumper's motion to compel arbitration and to stay pending arbitration, and that Mr. Melos's counsel would be submitting an opposition.  Attached hereto as Exhibit D is a true and accurate copy of the chain of emails between myself and Mr. Melo's attorneys that followed my message for Mr. Marchiando on March 2, 2020.

7. On March 5, 2020, without consulting me or any other Zumper attorney or advising us that they now were going to agree to arbitration, Mr. Melo's counsel moved for a further extension of time to respond to Zumper's pending motion to compel arbitration and stay proceedings (Dkt. No. 52) and Trade House Data's joinder in that motion (Dkt. No. 53).  Mr. Melo's counsel submitted a proposed order with that request in which Mr. Melo represented that he "consents to the Motion to Compel Arbitration as to Defendant Zumper, Inc, with the parties agreeing to arbitrate pursuant to the AAA Consumer Rules rather than the Commercial Rules," and would "file a stipulation to that effect on or before March 10, 2020."  Dkt. No. 63-2.

8. The stipulation to extend time that Mr. Melo's counsel filed included my electronic signature.  However, Mr. Melo's counsel never requested my permission to add my electronic signature to the stipulation and I never authorized that it be added.  Nor did Mr. Melo's counsel advise me that they would be promising the Court a stipulation to which Zumper was to be a party.  I did not then and do not believe now that Melo needed to do anything other than advise the Court of his agreement to Zumper's pending motion as required by Local Rule 7-3(b), although Zumper certainly would agree to the stipulation that Mr. Bennett then promised and his agreement to the motion to compel arbitration and to stay, while surprising and new, was welcome.

9. The Court granted the motion for extension of time and ordered Melo to file the proposed stipulation by March 10, 2010. Before March 10, 2020, none of the attorneys representing Mr. Melo had contacted me or my colleagues to propose language for the stipulation that Mr. Melo had represented to the Court he would make.

10. On March 10, 2020, I received an email from Mr. Marchiando with a proposed stipulation. The proposed stipulation was very different from the one that Mr. Melo had proposed to the Court in seeking an extension of time. It proposed dismissing Mr. Melo's claims against Zumper in this Court without prejudice with waiver by Zumper of certain defenses, not the stipulation of consent to Zumper's motion to compel arbitration and to stay that Melo's motion for extension of time had represented he would be making and to which Zumper would have agreed if asked. Attached hereto as Exhibit E is a true and accurate copy of Mr. Marchiando's March 10, 2020 email and the attachment thereto.

11. Mr. Marchiando's email of March 10 was the first time Mr. Melo proposed dismissing the case without prejudice (though it is a proposal in which Melo's counsel now continues in their proposed form of order on the present motion). After review of the proposed stipulation, I was disinclined to agree to the stipulation, because it would have mooted decision of Zumper's pending motion to compel arbitration and to stay pending arbitration and therefore avoided any binding determination that Mr. Melo was obligated to arbitrate his claims, and therefore would have permitted Mr. Melo to file a third lawsuit against Zumper. I did not believe that there was any necessity for the dismissal, since it is common for court lawsuits to be stayed pending arbitration as specifically provided in the Federal Arbitration Act, 9 U.S.C. § 3. I was opposed to the possibility that Melo's attorneys might argue that the dismissal of Zumper as a defendant would strengthen their argument, at least atmospherically if not strictly legally, that Melo's claims against Zumper's contractor, Trade House Data, were not so intertwined with his claims against Zumper that that they should be subject to binding arbitration under the Zumper terms as well. And I was concerned that dismissal of the case would increase the chance that, should the case return to court after any arbitration, it might be assigned to a different judge who

was less familiar with the background of the matter than Judge Hamilton (to whom he had not consented when I requested his consent to an administrative motion to deem the present case and another brought by a Mr. Gonzalez-Torres against Zumper to be related cases.) I also saw no reason to agree to waive any defenses as the stipulation would have provided. Mr. Melo's counsel had never before requested any such waiver and I had never agreed to any such waiver on behalf of my client.

12. Due to my business meetings in Florida and travel from Florida to Boston that day, I was unable to respond to Mr. Marchiando's email until the following day.

13. Mr. Marchiando emailed me again the following day, March 11, 2020, to inquire about the proposed stipulation of dismissal without prejudice. I responded to that email and explained that Zumper would not agree to the stipulation of dismissal without prejudice, but would instead would agree to a stipulation that the motion to compel arbitration and to stay pending arbitration was granted – that is, the one that Mr. Melo had represented in his March 5, 2020 filing that he would be making. Attached hereto as Exhibit F is a true and accurate copy of the chain of emails between myself and Zumper's counsel on March 11, 2020.

14. Mr. Bennett, emailed me again later in the day on March 11, 2020 at 10:15 a.m. Pacific Time to ask why Zumper was opposed to dismissing Melo's claims. *See* Exhibit F. Due to conference calls with opposing counsel and my client in another case, I was not able to respond to Mr. Bennett's email instantaneously. However, I did not believe, and do not believe now, that I was obligated to explain to Mr. Bennett the tactical reasons noted above why I opposed his new request for dismissal without prejudice and waiver of Zumper defenses – of which I believe he was in any event already well aware due to his extensive experience in complex class and other litigation and arbitration, as he had reported to me previously.

15. Less than four hours after Mr. Bennett's email, to which I had not yet had time to respond, at 1:56 p.m. Pacific Time, Mr. Marchiando filed a notice of voluntary dismissal of Mr. Melo's claims against Zumper pursuant to Rule 41(a)(1)(A)(i). Dkt. No. 66. Unlike the

proposed stipulation that Mr. Marchiando had sent to me one day earlier, and that I had explicitly rejected by reply email, the notice of dismissal did not state that it was "without prejudice."

16. Within minutes after that dismissal, and purportedly because he "could not hear back" from me in response to his email of less than four hours earlier, Mr. Bennett emailed me to notify me that Mr. Melo had filed a demand for arbitration against Zumper with the AAA. *See* Exhibit F. Attached hereto as Exhibit G is a true and accurate copy of Mr. Melo's arbitration demand.

17. In that email, Mr. Bennett requested that I "confirm that Zumper agrees to have the case heard . . . in Northern Virginia." None of Mr. Melo's attorneys had previously asked that Zumper agree that the arbitration be heard in Virginia. Zumper's terms specify that any arbitration will be conducted in San Francisco, California, unless the arbitrator determines otherwise. *See* Dkt. No. 12-5, § 14. I had not agreed to waive that provision.

18. By email of March 11, 2020, I replied that Mr. Melo's claims were now frivolous in light of the two voluntary dismissals, and that in the arbitration Zumper would seek dismissal and sanctions under the AAA Consumer Rules providing for same. *See* Exhibit F. I also informed Mr. Bennett that Zumper did not agree to holding the arbitration in Virginia, and believed that the arbitration should be conducted in San Francisco, as specified in the terms to which Mr. Melo agreed and in view of the size of the claim (purportedly over $1.7 million), the numerous claims under California law, and the membership of Mr. Bennett's colleagues in the California bar *See id.*

19. The unsworn assertions in Mr. Melo's brief (pp. 2, 5) that Zumper "reversed" or is "going back" on its position that the claims are arbitrable simply have no basis in fact.

20. In addition, the unworn assertions in Melo's brief (p. 3) that Zumper "did not respond" or somehow became "intractab[le] are simply untrue.

1  I declare under penalty of perjury that the foregoing statements are true and correct, and that I signed this declaration in Boston, Massachusetts, on March 26, 2020.

                                                                                                  */s/  John A. Shope*
                                                                                                   John A. Shope